UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY JEROME WOMACK,<br><br>    Plaintiff,<br><br>    v.<br><br>W. GIBBONS, et al.,<br><br>    Defendants. | No. 1:19-cv-00615-KES-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION FOR TERMINATING SANCTIONS BE GRANTED<br><br>(ECF Nos. 135, 136) |

Plaintiff is appearing pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.

On March 3, 2025, Defendants G. Obrien and E. Smith filed a motion for terminating sanctions. (ECF No. 135.) On this same date, Defendants W. Gibbons and A. Gomez filed a notice of joinder in the motion for terminating sanctions. (ECF No. 136.)

**I.**

**BACKGROUND**

The Court reiterates the lengthy background of these proceedings because it pertains directly to Plaintiff's repeated failure to comply with court orders and five-year delay in prosecuting this action beyond the discovery phase.

This action is proceeding against Defendants W. Gibbons, A. Gomez, E. Smith, and G. O'Brien for excessive force and deliberate indifference to a serious medical need.

1           On June 5, 2020, Defendants Gibbons and Gomez filed an answer to the complaint. (ECF No. 30.)

            On July 29, 2020, the Court issued the discovery and scheduling order. (ECF No. 44.)

            On August 10, 2020, Defendants Smith and O'Brien filed a timely answer to the complaint. (ECF No. 48.)

            On August 11, 2020, the Court issued an order extending the discovery and scheduling order to Defendants Smith and O'Brien. (ECF No. 49.)

            On March 24, 2021, Defendants Gibbons and Gomez filed a motion to compel discovery responses. (ECF No. 55.)

            On March 29, 2021, Defendants Smith and O'Brien filed a motion to compel discovery responses. (ECF No. 56.) Plaintiff did not file an opposition.

            On May 3, 2021, the Court granted Defendants' motion to compel, and Plaintiff was directed to file responses to the outstanding requests for production of documents within thirty days. (ECF No. 57.)

            On June 18, 2021, Defendants O'Brien and Smith filed the instant motion for discovery sanctions. (ECF No. 63.) Plaintiff filed an opposition on July 7, 2021, and Defendants filed a reply on July 14, 2021. (ECF Nos. 67, 69.)

            On July 20, 2021, the Court ordered Defendants Gibbons and Gomez to provide a copy of any discovery documents received by Plaintiff, and continued Defendants O'Brien and Smith's motion for discovery sanctions. (ECF No. 70.)

            On July 26, 2021, Plaintiff filed a sur-reply, and a supplemental sur-reply on July 29, 2021. (ECF Nos. 71, 72.)

            On August 3, 2021, Defendants Gibbons and Gomez filed a response to the Court's July 20, 2021, indicating that they never received any discovery documents from Plaintiff. (ECF No. 73.)

            On September 2, 2021, Findings and Recommendations were issued to grant Defendants' motion for termination as a discovery sanction. (ECF No. 77.) The Findings and Recommendations were adopted in full and judgment was entered on October 1, 2021. (ECF

2

Nos. 80, 81.)

On October 21, 2021, Plaintiff filed a notice of appeal. On July 3, 2023, the United States Court of Appeals for the Ninth Circuit reversed and remanded the action finding that dismissal of the action under Federal Rule of Civil Procedure 37 was improper. (ECF No. 98.) Therein, the Court noted that Plaintiff "declared that he mailed a signed declaration of the eyewitnesses, as well as available medical records, to defendants." (Id. at 2.) However, Defendants "contended that they had not received [Plaintiff's] prior mailing of medical records." (Id.)

On July 13, 2023, the Court directed Plaintiff to file responses to Defendants' request for production of documents, without objection, along with copies of any responsive documents.[1] (ECF No. 100.)

On September 8, 2023, Defendants O'Brien and Smith filed a motion to terminate the action as a discovery sanction. (ECF No. 104.) On September 25, 2023, Defendants Gibbons and Gomez joined in the motion. (ECF No. 105.)

On September 27, 2023, the Court ordered Plaintiff to show cause why the action should not be dismissed for failure to update his address, and again ordered Plaintiff to file responses to Defendants' request for productions, without objection, along with copies of any responsive documents.[2] (ECF No. 106.)

On November 7, 2023, Defendants O'Brien and Smith filed a supplement to the motion for terminating sanctions. (ECF No. 108.) On November 14, 2023, Defendants Gibbons and Gomez filed a supplement to their joinder in the motion for terminating sanctions. (ECF No. 109.)

On November 17, 2023, Plaintiff filed a response to the instant motion for discovery sanctions. (ECF No. 110.)

On November 20, 2023, the Court updated Plaintiff's address of record and directed Plaintiff to serve discovery responses on or before December 11, 2023. (ECF No. 111.)

On December 4, 2023, Plaintiff filed a response to the Court's November 20, 2023, order.

---

[1] The Court's order was returned by the United States Postal Office as "undeliverable."

[2] The Court's order was returned by the United States Postal Office as "undeliverable" "Refused."

3

1  (ECF No. 114.) Plaintiff submitted that he "will provide Defendants 170 pages of mental health
2  and medical records from Pelican Bay State Prison, Kern Valley State Prison, Tehachapi
3  Correctional Institution., and some mental health records from Salinas Valley State Prison.
4  Plaintiff is in the process of getting his medical records from Salinas Valley State Prison. But for
5  now Plaintiff will provide Defendants with the attached 170 pages of mental and medical records.
6  Also, Plaintiff has attached declarations of inmates Washington and Yasyn Soto!" (Id. at 1-2.)

7  On December 18, 2023, Defendants Gibbons and Gomez filed a response. (ECF No. 115.)
8  On this same day, Defendants O'Brien and Smith filed a response. (ECF No. 116.)

9  Defendants Gibbons and Gomez acknowledged that they received some medical and
10 psychiatric records from Plaintiff, but as Plaintiff concedes there are more records to be produced.
11 (ECF No. 115 at 2.) In addition, no declarations from other inmates were provided.[3] (Id.)

12 Defendants O'Brien and Smith submitted that they did not receive any documents from
13 Plaintiff; however, counsel for co-Defendants shared the documentation that Plaintiff provided.
14 (ECF No. 116 at 1.) Defendants requested that Plaintiff be directed to submit the additional
15 responsive documents within thirty days and that Plaintiff provide responses that identify which
16 documents are in response to which discovery request, and that he do the same for any subsequent
17 documents provided. (Id. at 2.)

18 On December 19, 2023, the Court ordered Plaintiff to submit documentation, to the best of
19 his ability, to identify which documents are in response to which previous discovery requests and
20 provide the additional discovery responses identifying the correlating discovery request. (ECF
21 No. 117.)

22 On January 29, 2024, the Court ordered Defendants to provide a status report regarding
23 the outstanding discovery. (ECF No. 118.) Defendants filed separate status reports on February 8,
24 2024. (ECF Nos. 119, 120.) Both Defendants indicated that they have not received any additional
25 medical documents from Plaintiff as directed by the Court's December 19, 2023 order. (Id.)
26 Because Plaintiff repeatedly failed to turn over the discovery documents as ordered by the Court,

---

[3] Plaintiff later stated that he never had declarations from any other inmates, and that his previous statements otherwise were due to his misunderstanding in believing that their signatures constituted a "group declaration." (ECF No. 119 at 1.)

1  the Court found it prudent to have Defendants assign a representative to go to Salinas Valley

2  State Prison to obtain the documents from Plaintiff on February 29, 2024.  (ECF No. 121.)

3    On March 19, 2024, Defendants Smith and O'Brien filed a status report indicating that a

4  private courier, went to Salinas Valley State Prison, and picked up 1531 pages of medical records

5  that Plaintiff had given to the litigation coordinator.  (ECF No. 123, Sheps Decl. ¶ 2.)

6    On April 3, 2024, Plaintiff filed a response to Defendants' status report.  (ECF No. 124.)

7    On April 24, 2024, Findings and Recommendations were issued recommending that

8  Defendants' motion for terminating discovery sanctions be denied.  (ECF No. 125.)

9    On January 6, 2025, the Court set this matter for an in-person settlement conference on

10 February 3, 2025, at Corcoran State Prison.  (ECF No. 127.)  However, the settlement conference

11 did not take place because Plaintiff refused to be transported for the proceedings.  (ECF No. 132.)

12   On March 3, 2025, Defendants G. Obrien and E. Smith filed a motion for terminating or

13 monetary sanctions.  (ECF No. 135.)  On this same date, Defendants W. Gibbons and A. Gomez

14 filed a notice of joinder in the motion for terminating or monetary sanctions.  (ECF No. 136.)

## II.

## LEGAL STANDARD

17   "District courts have the inherent power to control their dockets. In the exercise of that

18 power they may impose sanctions including, where appropriate, default or dismissal." Thompson

19 v. Housing Auth., 782 F.2d 829, 831 (9th Cir. 1986) (citing Link v. Wabash R.R. Co., 370 U.S.

20 626 (1961) ).

21   A court may dismiss an action based on a party's failure to prosecute an action, failure to

22 obey a court order, or failure to comply with local rules. Fed. R. Civ. P. 16(f); Fed. R. Civ. P.

23 41(b); Local Rule 110; Ghazali v. Moran, 46 F.3d 52, 53 (9th Cir. 1995) (citing United States v.

24 Warren, 601 F.2d 471, 474 (9th Cir. 1979) ) (dismissal for noncompliance with local rule);

25 Malone v. United States Postal Serv., 833 F.2d 128, 134 (9th Cir. 1987) (dismissal for failure to

26 comply with court order). Moreover, the Federal Rules specifically contemplate dismissal as a

27 potential sanction for a party's failure to comply with an order compelling discovery, Fed. R. Civ.

28 P. 37(b)(2)(A)(v), but "[o]nly 'willfulness, bad faith, and fault' justify terminating sanctions,"

Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills, 482 F.3d 1091, 1096 (9th Cir. 2007) (quoting Jorgensen v. Cassiday, 320 F.3d 906, 912 (9th Cir. 2003)).

"[The Ninth Circuit has] constructed a five-part test, with three subparts to the fifth part, to determine whether a case-dispositive sanction under Rule 37(b)(2) is just: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. The sub-parts of the fifth factor are whether the court has considered lesser sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of case-dispositive sanctions." Conn. Gen. Life Ins. Co., 482 F.3d at 1096 (footnote citations omitted); see also Malone v. U.S. Postal Service, 833 F.2d 128, 130 (9th Cir. 1987). "The most critical factor to be considered in case-dispositive sanctions is whether a party's discovery violations make it impossible for a court to be confident that the parties will ever have access to the true facts." Id. (footnote citation and internal quotation marks omitted).

### III.

### DISCUSSION

Defendants move for terminating or monetary sanctions for Plaintiff's failure to participate in the Court ordered settlement conference on February 3, 2025.

On January 6, 2025, the Court scheduled an in-person settlement conference for February 3, 2025, at California State Prison-Corcoran. (ECF No. 127.) Plaintiff did not object to the order setting the settlement conference. Because Plaintiff was confined at SVSP, the Court issued a writ of habeas corpus ad testificandum, directing CDCR to transfer him temporarily to CSP-Corcoran for the conference. (ECF No. 128.) On January 16, 2025, Plaintiff acknowledged receipt of the Court's orders and requested he be appointed counsel for the conference. (ECF No. 129.)

Counsel for all Defendants travelled from their respective offices to CSP-Corcoran for the settlement conference on February 3, 2025. In addition, a judicial officer prepared and travelled

1  to CSP-Corcoran for the settlement conference.[4]

2  On February 2, 2025, Deputy Attorney General (DAG) Ari Sheps, counsel for Smith and O'Brien, drove over 300 miles (approximately seven hours) from San Diego to CSP-Corcoran for the settlement conference. (Sheps Decl. ¶2.) DAG Sheps had also previously adjusted his personal travel and vacation plans so he would be able to attend the conference, incurring $320 in personal expenses. (Sheps Decl. ¶3.)

Upon arrival at CSP-Corcoran on February 3, 2025, defense counsel learned that Plaintiff had refused transport from SVSP. (Sheps Decl. ¶4.) Plaintiff gave no reason for his refusal to SVSP staff and did not notify Defendants' counsel in advance, despite possessing the time and means to do so. (Id. at ¶¶5-6) As a result, the settlement conference was canceled. (Sheps Decl. ¶7.) Defense counsel returned to San Diego, totaling 14 hours and 600 miles in transit. (Id.)

CDCR incurred approximately $5,892.00 for DAG Sheps' time preparing for and traveling to the settlement conference. (Sheps Decl. ¶11.) Additionally, DAG Sheps' heavy caseload meant his travel prevented work on other CDCR matters. (Sheps Decl. ¶ 12.) Attorney Ashley M. Calvillo, counsel for Co-Defendants Gibbons and Gomez incurred approximately $2,795.00 in expenses for her time in preparing and attending the settlement conference. (Calvillo Decl. ¶ 12.)

For the reasons explained below, dismissal of this action is appropriate due to Plaintiff's repeated failure to comply with court orders and willful failure to participate in the court ordered settlement conference on February 3, 2025 order

**A. Public Interest in Expeditious Resolution and Court's Need to Manage Docket**

Here, Plaintiff's failure to participate in the settlement conference after being ordered to do so precludes an expeditious resolution of this matter and unnecessarily prolongs this case on the court's docket. The public has "an overriding interest" in orderly, expeditious, and inexpensive determination of every action. In re Phenylpropanolamine (PPA) Prods. Liab. Litig., 460 F.3d 1217, 1227 (9th Cir. 2006). Delay in reaching the merits is costly "in money, memory,

---

[4] Although the Court conducted other settlement conferences on this date at CSP-Corcoran, the scheduling of this case denied others the benefit of having their case put on calendar for a settlement conference.

7

1  manageability, and confidence in the process." Id. Though cases should generally be disposed of
2  on their merits, a plaintiff is responsible for moving their case to that disposition.
3       Similarly, any prolonged resolution inhibits the Court's need to manage its docket. "The
4  power to invoke this sanction is necessary in order to prevent undue delays in the disposition of
5  pending cases and to avoid congestion in the calendars of the District Courts." Link v. Wabash
6  R.R. Co., 370 U.S. 626, 629–30 (1962).
7       Here, Plaintiff has maintained this action since 2019. Plaintiff's conduct has already
8  delayed this litigation, impeding the Court's ability to manage the other cases before it. Plaintiff's
9  unexplained refusal to attend a settlement conference has now resulted in yet another delay to this
10 litigation, and will further delay a resolution of this matter on the merits. Additionally,
11 Defendants came to the settlement conference prepared to make a settlement offer that may have
12 resolved this matter once and for all. Plaintiff's failure to appear has made this potential
13 resolution impossible.  Plaintiff's failure to appear at the settlement conference also suggests that
14 he is not seriously interested in prosecuting his case. Indeed, based on Plaintiff's conduct thus far,
15 the Court has no confidence that he would comply with future court deadlines and orders.  The
16 amount of judicial resources expended for this Plaintiff who has willfully failed to appear should
17 not be condoned nor should the Court be required to plead with Plaintiff in order to comply with
18 its orders.  Indeed, Plaintiff filed this action, and he is required to litigate it in an efficient and
19 timely manner.  This case cannot simply remain idle on the Court's docket, unprosecuted by
20 Plaintiff giving Defendants the runaround.  The law should not be relegated to recommendation
21 status. Plaintiff has already been subject to two orders to show cause, a court order compelling
22 discovery, and evidentiary sanctions. Despite these measures, he continues to disregard Court
23 orders and obstruct the case's progression. Plaintiff's routine noncompliance demonstrates that
24 terminating sanctions and dismissal are warranted  To otherwise excuse this conduct, condones
25 disrespect for the law and the rights of all plaintiff and defendants who seek to prosecute and
26 defend these cases.
27      **B. Risk of Prejudice to Defendants**
28      Defendants argue that the third factor also weighs in favor of dismissal because Plaintiff's

8

willful misconduct has caused significant and unnecessary delays, warranting a presumption of prejudice. Defendants suffered undue prejudice, having wasted considerable time and resources preparing for and attending a settlement conference that Plaintiff willfully prevented from occurring. Defendants spent approximately 24 hours preparing for and traveling to the settlement conference, incurring costs of $5,892.00 expenditures which were ultimately unnecessary due to Plaintiff's actions.  Further, while it would not have excused his nonappearance, Plaintiff, like all CDCR inmates, had the ability to contact Defendants' counsel by phone at no cost but chose not to do so. (Sheps Decl. ¶¶5-6) While Plaintiff has given no reason for his nonattendance, even if his refusal to attend was due to unforeseen circumstances, he could have mitigated the prejudice by notifying Defendants in advance. His deliberate refusal to attend the settlement conference and to at least notify Defendants of his intentions forced Defendants to waste substantial resources, compounding the prejudice already suffered.  Plaintiff's failure to appear for participate in the settlement conference also placed an undue financial burden on Defendants as they have had to needlessly incur expenses seeking the Court's assistance to enforce orders.  Finally, Plaintiff has not provided a non-frivolous excuse for his delay as he has not filed an opposition to the instant motion.

Finally, Defendants will continue to be prejudiced by Plaintiff's nonappearance. Had Plaintiff attended the settlement conference as ordered, the matter may have been resolved preventing the need for any further litigation. Now, should this matter be allowed to proceed, Defendants will be forced to expend even more resources on this matter to defend against Plaintiff's allegations that occurred over 6 years ago. While the case may or may not have ultimately settled at the conference, Plaintiff's actions have denied Defendants the opportunity to try to resolve this matter expeditiously and has thus the Defendants will suffer continuous prejudice should this matter be allowed to continue.

Because Plaintiff's improper actions have prejudiced and will continue to cause prejudice to Defendants, the third factor also weighs in favor of dismissal.

**C.  Availability of Less-Drastic Sanctions**

As to the availability of lesser sanctions, the relevant questions are: "(1) Did the court

9

explicitly discuss the feasibility of less drastic sanctions and explain why alternative sanctions would be inadequate? (2) Did the court implement alternative methods of sanctioning or curing the malfeasance before ordering dismissal? (3) Did the court warn the plaintiff of the possibility of dismissal before actually ordering dismissal?" Malone, 833 F.2d at 132.  "The district court abuses its discretion if it imposes a sanction of dismissal without first considering the impact of the sanction and the adequacy of less drastic sanctions." Id. at 131-32 (quoting United States v. Nat'l Med. Enters., Inc., 792 F.2d 906, 912 (9th Cir. 1986)). A "[w]arning that failure to obey a court order will result in dismissal can itself meet the 'consideration of alternatives' requirement." Estrada v. Speno & Cohen, 244 F.3d 1050, 1057 (9th Cir. 2001); Malone, 833 F.2d at 132–33; Adriana Intern. Corp. v. Thoeren, 913 F.2d 1406, 1413 (9th Cir. 1990).

Here, the Court has repeatedly warned Plaintiff that continued noncompliance would result in dismissal and has already tried to impose lesser evidentiary sanctions. (See ECF Nos. 7, 44, 100, 106, 111, 117, 121.)  Indeed, when setting the date and procedures for the settlement conference, the Court explicitly warned: "A failure to follow these procedures may result in the imposition of sanctions by the court." (ECF No. 127.) (emphasis in original). These sanctions and warnings have failed to compel Plaintiff to comply with Court orders or litigate in good faith. Given his ongoing disregard for judicial directives, no lesser sanction will be effective.  Plaintiff has been sufficiently warned of the consequences of failing to comply with the Court's orders, and yet he continues to ignore them.

In an ordinary case, monetary sanctions might serve as an appropriate remedy. However, because Plaintiff is proceeding in forma pauperis, monetary sanctions would be ineffective as he lacks the financial means to pay them.  Federal courts have consistently held that monetary sanctions are ineffective against indigent litigants. See Pik v. Univ. of Penn., 457 F. App'x 122, 123 (3d Cir. 2012) ("Monetary sanctions would not have been an effective alternative because Pik was proceeding in forma pauperis."); Smith v. McKune, 345 F. App'x 317, 320 (10th Cir. 2009)(internal quotes and citation omitted) ( "lesser sanctions are not just lacking in efficacy. Monetary sanctions are meaningless to a plaintiff who has been allowed to proceed in forma pauperis."); Gonzales v. City of Clovis, No. 1:12-cv-00053-AWI, 2013 WL 1314077, at *2 (E.D.

Cal. Apr. 1, 2013) ("[B]ecause Plaintiff is proceeding pro se and in forma pauperis, monetary sanctions are not a viable alternative"); Hazeltine v. Tuolumne Cty. Bd. of Supervisors, No. 1:04-cv-06712-LJO, 2011 WL 39029, at *2 (E.D. Cal. Jan. 5, 2011) ("Alternatives, less drastic than dismissal, do not appear to be realistic. Because Plaintiff is proceeding in forma pauperis, monetary sanctions are not a viable option.").

The Court's prior evidentiary sanctions failed to deter Plaintiff's misconduct. Despite multiple warnings that noncompliance could result in dismissal, Plaintiff has willfully ignored them and refuses to change his behavior. Since no alternative sanction is likely to be effective, terminating sanctions are necessary and warranted.

**D. Public Policy Favoring Disposition of Cases on the Merits**

This factor "lends little support" where the behavior of the party against whom dismissal is sought impeded disposition of the case on its merits. In re: Phenylpropanolamine (PPA) Prods. Liab. Litig., 460 F.3d 1217, 1228 (9th Cir. 2006); Sanchez v. Rodriguez, 298 F.R.D. 460, 472 (C.D. Cal 2014.) ("While the fourth factor of the test generally tends to cut against dismissal as a sanction, the public policy favoring the disposition of cases on their merits is not furthered by litigants who ... refuse to provide the defense with critical discovery, thereby hindering the preparation of a defense on the merits."); Properties, Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1022 (9th Cir. 2002) (this factor does not preclude dismissal where the other factors weigh in favor of dismissal.).

Plaintiff initiated this action in 2019 but has consistently failed to prosecute it diligently or in good faith. His unexplained refusal to attend the Court-ordered settlement conference has further delayed resolution and wasted judicial resources. Defendants attended the settlement conference prepared to extend a settlement offer that could have resolved this matter entirely. However, Plaintiff's willful refusal to appear prevented any opportunity for resolution, forcing both the Court and Defendants to devote additional time and expenses to litigation that may have otherwise been avoided.

Given Plaintiff's refusal to participate in Court-ordered proceedings, continued litigation would only waste judicial resources and undermine the Court's ability to enforce its orders. The

fourth factor strongly supports dismissal, as Plaintiff's repeated failure to comply with Court orders has forced the Court to devote unnecessary time and resources to managing his noncompliance. Courts must be able to control their dockets without repeated intervention due to a litigant's disregard for procedural rules.

Plaintiff has already been subject to two orders to show cause, a court order compelling discovery, and evidentiary sanctions. Despite these measures, he continues to flout Court orders and obstruct the progression of this case. His conduct has burdened the Court and Defendants alike, making dismissal the appropriate remedy. See Lucien v. Breweur, 9 F.3d 26 (7th Cir. 1993) (district court may dismiss prisoner's civil rights action for failure to appear at pretrial conference).

### E. Willful Conduct

In addition, case-dispositive sanctions are warranted because Plaintiff's failure to comply with his discovery obligations and Court orders is willful. The Ninth Circuit has stated that "[o]nly 'willfulness, bad faith, and fault' justify terminating sanctions." Conn. Gen. Life Ins. Co., 482 F.3d at 1096 (citing Jorgensen v. Cassiday, 320 F.3d 906, 912 (9th Cir. 2003)). This prerequisite "does not require wrongful intent." Sanchez v. Rodriguez, 298 F.R.D. 460, 463 (C.D. Cal. 2014). Instead, " '[d]isobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness, bad faith, or fault.' " Jorgensen, 320 F.3d at 912 (citation omitted). "Delay, failure to appear for depositions, failure to answer interrogatories resulting from a party being out of town, and misunderstanding a party's own counsel are not matters outside of a party's control." Nat'l Corp. Tax Credit Funds III, IV, VI, VII v. Potashnik, 2010 WL 457626, at *4 (C.D. Cal. Feb. 4, 2010) (citing Henry v. Gill Indus., Inc., 983 F.2d 943, 949 (9th Cir. 1993)).

Plaintiff's refusal to attend the February 3, 2025, settlement conference was not the result of mistake, inadvertence, or factors beyond his control, it was a deliberate and intentional decision. Willful misconduct is established when a party knowingly disobeys a court order without justification. See Fjelstad v. American Honda Motor Co., 762 F.2d 1334, 1341 (9th Cir. 1985). In assessing willfulness, the Court may consider the party's motivations, and can consider

his "dilatory and obstructive conduct" in the case and other related cases. Compass Bank v. Morris Cerullo World Evangelism, 104 F. Supp. 3d 1040, 1053 (S.D. Cal. 2015).

Here, Plaintiff received multiple written orders from the Court regarding the settlement conference and even acknowledged receipt. (ECF No. 129.) He was aware of the logistics and had ample time to raise any objections or request modifications. Instead, he knowingly refused transportation from SVSP to CSP-Corcoran without offering any justification to prison staff or Defendants' counsel. (Sheps Decl. ¶¶ 4-5; Calvillo Decl. ¶¶ 6-7.) This was not an accident, nor did Plaintiff attempt to communicate an excuse. His inaction and silence further demonstrate his intent to obstruct judicial proceedings.

To reiterate, this is not an isolated incident. Plaintiff has a documented history of disregarding court orders, including failing to provide discovery responses for over five years, producing irrelevant documents, and failing to update his address, resulting in undeliverable court mailings.  Although the Ninth Circuit previously reversed dismissal on finding Plaintiff's prior noncompliance was not "willful" (ECF No. 98), his continued behavior since then—including his refusal to attend a court-ordered settlement conference—clearly demonstrates bad faith. See Leon v. IDX Sys. Corp., 464 F.3d 951, 961 (9th Cir. 2006) (bad faith exists where a party engages in obstructive tactics to delay proceedings or by hampering enforcement of a court order).

Plaintiff's refusal to appear at the settlement conference wasted judicial resources and imposed unnecessary expenses on Defendants, including travel costs, preparation time, and counsel's inability to work on other cases. (Sheps Decl. ¶ 14; Calvillo Decl. ¶¶ 12-13.) Given Plaintiff's history of noncompliance and the absence of any justification for his refusal, his conduct was willful, in bad faith, and warrants the strongest available sanctions-dismissal of this action, with prejudice.

## IV.
## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss this action as a discovery sanction be granted; and
2. The instant action be dismissed, with prejudice.

13

1    These Findings and Recommendations will be submitted to the United States District
2 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **fourteen**
3 **(14) days** after being served with these Findings and Recommendations, the parties may file
4 written objections with the Court.  The document should be captioned "Objections to Magistrate
5 Judge's Findings and Recommendations."  The parties are advised that failure to file objections
6 within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772
7 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 9, 2025**

STANLEY A. BOONE
United States Magistrate Judge